**John G. BULLINGTON,
Plaintiff–Appellee,**

v.

**IBP, INC., Defendant–Appellant.**

**No. 01–3242.**

United States Court of Appeals,
Tenth Circuit.

Oct. 31, 2002.

Brenda L. Head, Davis, Unrein, Hammer, McCallister & Buck, Topeka, KS, for Plaintiff–Appellee.

Heather S. Woodson, Stinson, Morrison & Hecker, Overland Park, KS, for Defendant–Appellant.

---

Before HENRY, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and MURPHY, Circuit Judge.

## ORDER AND JUDGMENT*

McWILLIAMS, Senior Circuit Judge.

John Bullington, a citizen of Idaho employed as a meat inspector by the United States Department of Agriculture ("USDA"), brought suit in the United States District Court for the District of Kansas against IBP, Inc. ("IBP"), a Delaware corporation doing business in the State of Kansas. In his complaint, Bullington alleged that on June 24, 1997, while working within the scope of his employment with the USDA at IBP's meat packing plant, he was negligently injured by an employee of IBP (Welner Lopez), who was working within the scope of his employment with IBP and, as a result thereof, he suffered serious and permanent injury, sustained significant medical expenses, wage loss and would suffer future pain of body and mind. Bullington sought judgment in excess of $75,000.00 and such further relief as was just and equitable. Jurisdiction was based on 28 U.S.C. § 1332. By answer, IBP denied that its employee was negligent and alleged affirmatively, *inter alia*, that under Kansas law any negligence on the part of IBP "must be compared to the fault or negligence of plaintiff ... or others...." By pretrial order, Bullington added a claim against IBP for its negligent training and supervision of its employee, Lopez.

On April 4, 2001, a jury found IBP, Bullington and the USDA all to be at fault for the injuries sustained by Bullington and allocated that fault as follows: Bullington 5%; IBP 70%; and the USDA 25%,

and fixed Bullington's total damages at $265,224.00. By amended judgment, the district court on April 9, 2001, entered judgment against IBP in favor of Bullington for $185,656.80, i.e., 70% of the total damage award. On April 18, 2001, IBP filed a renewed motion for judgment as a matter of law, or, in the alternative, a motion for a new trial or remittitur. On July 6, 2001, the district court denied that motion. IBP appeals.

IBP frames the one issue raised on appeal as follows:

> Whether the district court erred in excluding evidence that the United States Department of Agriculture ("USDA") *now* requires inspectors to wear protective gloves where plaintiff, a USDA inspector, claimed it was not feasible for him to wear protective gloves and was not wearing gloves at the time of the injury to his hand. (Emphasis ours.)

Some background facts will perhaps put the issue raised by IBP on appeal in focus. IBP owns and operates a high-speed beef packing plant in Emporia, Kansas, where cattle are slaughtered and beef is processed for sale. Because IBP sells its meat in interstate commerce, it is required by federal law to have USDA inspectors present in its plant. Those inspectors are employees of the USDA, and, as such, IBP has no supervisory authority or control over them and they are not subject to IBP's safety rules. On June 23, 1997, Bullington, an inspector for the USDA, agreed to substitute for an inspector at IBP's plant in Emporia. The accident which is the basis for the present action occurred on June 24, 1997. On that date,

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Bullington "rotated" through various "inspector positions" in the plant and eventually ended up in the "high trim rail position," where the accident occurred. In that particular position, Bullington makes a final evaluation of each carcass by "looking" at the carcass, and, if necessary, "feeling" the carcass with his fingers, for any remaining pathological defects on the carcass, and if he finds such, instructing an IBP trimmer to remove the same. After that, the carcass is sent on to final processing.

IBP assigned one of its employees, Lopez, to work on the final trim position next to Bullington, who, as said, was acting as the USDA inspector. In accordance with IBP's safety rules, Lopez was wearing protective sleeves, a glove made out of steel mesh on his left hand, and a glove made out of Kevlar on his right hand. Bullington was not wearing gloves, and therein lies our present controversy. When Lopez trimmed off a piece of carcass to remove a defect perceived and pointed out by Bullington, he accidentally cut Bullington's hand. Bullington immediately left the floor and went to IBP's nurse's office and was later taken to a hospital, where surgery was performed. Bullington's action was based on the injury sustained in the accident.

The issue raised on appeal was presented to the district court as follows. In the middle of defense counsel's cross-examination of Bullington at trial, the following colloquy occurred between court and counsel at a so-called side-bar hearing, out of the earshot of the jury:

MS. WOODSON (counsel for IBP): I'm ready to get into the issue that we discussed yesterday about the USDA's requirement that the inspectors wear gloves. Mr. Bullington testified in his deposition that—

THE COURT: You're going too fast.

MS. WOODSON: Okay, sorry. Mr. Bullington testified in his deposition that that requirement was in process at the time of his accident. He had already been notified that the glove wearing was going to become mandatory at the time of the accident. So I then contend that isn't a subsequent remedial measure because it was something that was in place before the accident, not in response to the accident. And in any case, it was an action by someone who's not a party to the USDA (sic), so the policies behind Rule 407 don't apply.

MS. HEAD (counsel for Bullington): Your Honor, I would have the same objection made in my written motion, which is that Rule 407 is subsequent remedial measures. First of all, the requirement was not in effect at the time of this accident so he was not required to wear the gloves. Second of all, that requirement does not pertain to the high rail position that he was on at the time of this accident then or now. So it really isn't relevant if someone else in the plant is required to wear gloves.

MS. WOODSON: I have one more thing to say on this. In her opening, Ms. Head argued that it would not be feasible for inspectors to wear these Kevlar gloves. And on direct, Mr. Bullington testified he couldn't wear gloves in this high trim position because he needed to palpate the meat, but we know that the USDA has put this requirement in place for inspectors in other positions, livers and plucks, where he admits they also have to palpate and feel things with their hands. Therefore, the feasibility is an issue even if this is a subsequent remedial measure, which I don't think it is. It's admissible under 407 on the issue of feasibility.

THE COURT: Objection sustained.

After the district court sustained Bullington's objections, defense counsel stated that she would like to make a proffer of proof, out of the presence of the jury. The jury was taken from the courtroom, and counsel made her proffer. The proffer consisted of further cross-examination of Bullington wherein Bullington testified, *inter alia*, that he "understood" that at the time of the accident the USDA was considering a rule that would make it mandatory that its inspectors wear protective gloves in packing plants such as IBP's, but that such proposed requirement would not apply to inspectors in the "high trim" position because the latter had to "feel the beef." In this regard, Bullington testified that at the "high trim" position he often had "to actually squeeze and sometimes even dig to get inside this fat to grab that lymph node. And that would be a little hard to do with gloves on anyway." Bullington testified further that he still didn't wear protective gloves when working the "high trim" position nor was he ever required to do so by the USDA.

In addition to its proffer[1] of Bullington's testimony in connection with a possible glove requirement, IBP proffered a June, 1997, newsletter of the Food Safety and Inspection Service Division (FSIS) of the USDA, which read, in pertinent part, as follows:

> The Agency has identified a cut-resistant glove and an impervious outer glove that meet the criteria of protecting employees and at the same time permits them to effectively perform inspection. The Agency is proposing a policy under which all inspectors assigned to high-speed red meat slaughtering plants will be provided with protective gloves. It is expected that the number of knife cuts will have dramatic decrease with the use of cut-resistant gloves.

After the amended judgment was entered, IBP renewed its motion for judgment as a matter of law, or, in the alternative, for new trial or remittitur. The motion was supported by a lengthy memorandum. One of the several matters urged in the memorandum was that the district court erred in excluding evidence concerning the USDA and its consideration, and later adoption, of a "glove requirement" for its inspectors.

To IBP's renewed motion for judgment as a matter of law, or, in the alternative, a motion for new trial or remittitur, Bullington filed a response, and IBP filed its reply thereto. On July 6, 2001, the district court denied IBP's motion. On the issue of whether it had erred in excluding IBP's proffered evidence that the USDA had, after the accident here in question, mandated protective gloves for all its inspectors, the district court declined to consider the propriety of its ruling "because even assuming *arguendo* that the ruling was erroneous, the court finds the ruling failed to affect defendant's substantial rights." The district court did, nonetheless, go on to discuss briefly, the propriety of its ruling, in the course of which it said: "No evidence was offered, which indicated that the USDA had at any time made the wearing of the gloves mandatory for high trim inspectors." As indicated, on appeal the only issue raised by counsel is the exclusion of evidence issue. In other words, counsel does not raise on appeal other matters contained in her post-trial motion for judgment as a matter of law, or in the alternative, a motion for a new trial or remittitur.

In connection with our standard of review of a district court's ruling excluding

---

**1.** IBP's proffer did not include any statement or other indication from the USDA that it was mandating gloves for inspectors working at the "high trim rail" position.

proffered evidentiary matter, in *Webb v. ABF Freight System, Inc.*, 155 F.3d 1230, 1246 (10th Cir.1998), *cert. denied*, 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999), we spoke as follows:

> ABF contends that it is entitled to a new trial in light of various evidentiary decisions during the trial. Such rulings generally are committed to the very broad discretion of the trial judge, and they may constitute an abuse of discretion only if based on an erroneous conclusion of law, a clearly erroneous finding of fact or a manifest error in judgment. Under this standard of review, we must "give deference to the district court's evidentiary rulings." Furthermore, if we find an erroneous evidentiary ruling, ABF would be entitled to a new trial only when the error affected the party's substantial rights. (Citations omitted.)

As above stated, the district court in denying IBP's motion for judgment as a matter of law, or, in the alternative, a motion for new trial or remittitur, observed that "No evidence was offered, which indicated that the USDA had at any time made the wearing of gloves mandatory for high trim inspectors." We agree. The fact that the USDA may have ordered its inspectors in other positions to wear gloves is not relevant to the issue at hand. It is agreed that the accident under consideration here occurred when both Bullington and Lopez were working at the "high trim position."

The issue raised on appeal, which has been set forth above verbatim, is premised on the assumption that after the accident, the USDA required a USDA inspector, which would presumedly include an inspector at the "high trim rail position," to wear protective gloves. Based on that premise, counsel, in framing the issue on appeal, argues that since Bullington had testified it was not "feasible for him to wear protec-tive gloves, and was not wearing gloves at the time of the injury to his hand," the proffered evidence comes within the "feasibility exception" to Fed.R.Evid. 407, which rule provides that "subsequent remedial measures" are not admissible to prove negligence, but may be admissible to show "feasibility of precautionary measures, if controverted or impeached."

IBP did not in its proffer, or otherwise, show that the USDA ever made the wearing of protective gloves at the "high trim rail position" mandatory. Actually the evidence on this particular matter is to the contrary. Although the USDA may have ordered inspectors working at other positions along the line to wear protective gloves, there is nothing to indicate that the USDA required its inspectors working on the high trim rail position to wear them. The newsletter of FSIS, issued the same month that Bullington was injured, merely said that the USDA "is proposing a policy under which all inspectors assigned to high speed red meat slaughtering plants will be provided with protective gloves." Proposing such a policy does not mean that it was ever adopted. And, according to that newsletter, the proposal was only to "provide gloves," not "require gloves."

As indicated, IBP's proffer was based, in the main, on Bullington's answers to questions asked by counsel on cross-examination, out of the presence of the jury. In that examination, Bullington stated categorically that he still does not wear gloves when working at the "high trim rail position," nor has the USDA ever required him to do so.

In counsel's cross-examination of Bullington in support of her proffer, Bullington was asked whether, in his pre-trial deposition, when asked whether the "new USDA requirement for those Kevlar gloves apply to the inspectors at the rail," he had testified "I am not sure of that, you would have

to ask the USDA. I wouldn't know." Such, however, is no evidence that the USDA now requires inspectors on the "high trim rail" position to wear gloves.

In short, IBP's argument that its proffered evidence was admissible under the feasibility exception to Fed.R.Evid. 407 is based on the erroneous assumption that after the accident, the USDA mandated the wearing of protective gloves for an inspector working on the "high trim rail position." Such assumption is not supported by the record. As the district court opined: "No evidence was offered which indicated that the USDA had at any time made the wearing of gloves mandatory for high trim inspectors." Hence, IBP's argument, based on that premise, must necessarily fail. In like fashion, other matter urged on appeal is subject to the same flaw. Such being the case, we need not here consider, as the district court did, whether exclusion of the proffered evidence affected IBP's "substantial rights."

Judgment affirmed.